UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA | Crim. No. 15-116 (KM) |
| v. |  |
| JOHN FREEHAUF, | **MEMORANDUM & ORDER** |
| Defendant. |  |

Defendant John Freehauf pled guilty in March 2015 to an Information that charged him with one count of conspiracy to distribute 50 grams or more of methamphetamine. *See* 21 U.S.C. §§ 846, 841(a) & (b)(1)(A). On March 7, 2019, he was released from imprisonment. He began serving a five-year term of supervised release, which is set to expire on July 25, 2024. Now before the Court is Mr. Freehauf's *pro se* motion (DE 105), supplemented by counsel (DE 107), pursuant to 18 U.S.C. § 3583(e), for early termination of his term of supervised release. The government opposes the motion. (DE 108) For the reasons stated herein, the motion is denied.

I. **MERITS OF THE MOTION**

As relevant here, the statutory provision for early termination states as follows:

> (e) Modification of Conditions or Revocation.—The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)—
>
> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice . . . .

18 U.S.C. § 3583(e). The court need not make detailed findings as to each of the relevant § 3553(a) factors, but must indicate that it has

considered them. *See United States v. Melvin*, 978 F.3d 49, 52–53 (3d Cir. 2020).[1] "Extraordinary, new or unforeseen" circumstances, while of

---

[1] For convenience, the relevant sections of § 3553(a) are quoted here:

**(a) Factors To Be Considered in Imposing a Sentence.—** . . . The court, in determining the particular sentence to be imposed, shall consider—

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed— . . .

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . .

**(4)** the kinds of sentence and the sentencing range established for—

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

**(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement—

**(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.[1]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

course relevant, are not a prerequisite to relief. *Id. Melvin* agreed, nevertheless, that "'[g]*enerally*, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Id.* at 53 (Citations and internal quotation marks omitted).

I have considered all of the relevant factors. My denial of this motion rests primarily on the nature of the offense, and the need for a sentence that reflects the seriousness of the offense, promotes respect for the law, provides deterrence, and protects the public. I consider also that the court's original imposition of sentence was intended to, and did, serve the § 3553(a) factors and that the statutory five-year term of supervised release was calculated to ensure that the defendant will not backslide. That much has not changed since sentence was imposed.

The parties agreed that the applicable offense level was 35, which would have entailed a minimum of 168 months' imprisonment. For good and sufficient reasons, the Court departed and/or varied downward to a sentence of 72 months, plus a 5-year term of supervised release. The Court's leniency with respect to imprisonment does not, however, equate to a finding that further supervision is not necessary.

The offense conduct involved Mr. Freehauf's full participation in a drug trafficking organization as a source of supply. A former Customs officer, Freehauf occupied a leadership role in that multistate trafficking ring, overseeing the regular packaging and distribution of substantial quantities of methamphetamine to suppliers and retailers in New Jersey. Frankly, even the agreed offense level of 35 to some degree minimized his conduct. In short, he was thoroughly ensconced in a criminal way of life, fueled in part by his own addiction. The reduction in his sentence of imprisonment reflected, to a large degree, grounds that in no way detract from the culpability of his criminal actions.

There is much to applaud in Mr. Freehauf's subsequent history, however. He credits the shock of incarceration for a turnaround in his life. He has served that sentence of incarceration, and has fully complied with conditions of release. He has successfully maintained regular employment, reestablished family ties, completed a B.A. degree, and stayed away from illegal drugs and alcohol. His compliance is well documented.

All of the above, however, represents supervised release functioning as intended. Burdens are currently minimal. On the low intensity caseload, a supervisee is generally required, until his term expires, to report any change in employment or residence; obtain clearance for planned out-of-area travel; and to submit a report at intervals set by the Probation Office, often monthly. In short, Probation appears to be reasonably accommodating the reduced need for supervision; they are doing no more than keeping minimal tabs on a former major drug trafficker and addict, to ensure that he does not fall back into old ways. That is not too much to ask.

Counsel has raised another specific basis for termination, consisting of Mr. Freehauf's planned move to Westfield, MA, to be near his fiancé. That does not require termination, but can be accommodated by a routine transfer of supervision to that district.

I do not minimize the tremendous strides that Mr. Freehauf has made. Moreover, should conditions of supervision interfere with such worthy rehabilitative goals as maintenance of employment, Mr. Freehauf may request that his supervising officer modify them. At the present time, however, early termination is not advisable. The motion is therefore denied.

## II.   WAIVER

Although waiver is potentially a threshold issue, I need not reach it, because I would deny the motion on the merits, for the reasons stated above. I nevertheless briefly discuss the waiver issue, and its current status, in the alternative.

Mr. Freehauf's plea agreement, filed July 14, 2014, contains a legacy waiver provision that the U.S. Attorney's Office appears to have discontinued:

> 10. Freehauf knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 35. This Office will not file any appeal, motion, or writ which challenges the sentence imposed by the sentencing court if that sentence falls within or above the Guidelines range that results from the agreed total Guidelines offense level of 35. The parties reserve any right they may have under 18 U.S.C. § 3742 to appeal the sentencing court's determination of the criminal history category. The provisions of this paragraph are binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, if the sentencing court accepts a stipulation, both parties waive the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so.
>
> 11. Both parties reserve the right to opposed or move to dismiss any appeal, collateral attack, writ, or motion barred by the preceding paragraph and to file or to oppose any appeal, collateral attack, writ or motion not barred by the preceding paragraph.

(DE 102 at 6–7 ¶¶ 10, 11. *See also id.* at 2 (advising that the court "(5) must require Freehauf, pursuant to 21 U.S.C. § 841(b)(1)(A), to serve a term of supervised release of at least 5 years, which will begin at the expiration of any term of imprisonment imposed."))

The U.S. Court of Appeals for the Third Circuit construed a District of New Jersey plea agreement containing similar language in *United States v. Damon*, 933 F.3d 269, 272 (3d Cir. 2019). *Damon* affirmed the district court's denial of that defendant's post-imprisonment motion, pursuant to 18 U.S.C. § 3583, to shorten his term of supervised release. After exhaustive analysis, *Damon* held that the defendant's plea agreement

waived such a challenge, because it fell within the scope of the waiver of appeals and other challenges to the sentence.

To be enforceable, a waiver in a plea agreement must meet three criteria: that "(1) [] the issues [defendant] pursues on appeal fall within the scope of his appellate waiver and (2) that he knowingly and voluntarily agreed to the appellate waiver, unless (3) enforcing the waiver would work a miscarriage of justice." *Damon*, 933 F.3d at 272 (quoting *United States v. Corso*, 549 F.3d 921, 927 (3d Cir. 2008)). There is no challenge here to the scope of the plea agreement or the voluntariness of the plea. Mr. Freehauf argues only that he has reformed, and that his exemplary conduct demonstrates that further supervision is unnecessary. Such considerations present a judgment call at best, and do not rise to the level of a miscarriage of justice.

*Damon* forecloses any argument that "sentence," as used in the plea agreement, does not encompass the supervised release component.[2] All of that said, *Damon* has been distinguished from time to time.[3] I note in addition that the U.S. Attorney's Office for the District of New Jersey appears to have revised its standard plea agreement language. I now regularly see provisions exempting First Step Act motions, proceedings to revoke supervised release, and related appeals from the scope of the standard waiver of appeals and other challenges to sentence. I do not suggest any impropriety in the government's reliance here

---

[2] *Damon* involved the waiver of an appeal from the denial of an application for early termination of supervised release, rather than the application itself. Still, the logic is parallel.

*Damon* also raised, but did not resolve, a second threshold issue: whether the district court is empowered to shorten a term of supervised release below the mandatory minimum of "at least 4 years" required by 21 U.S.C. § 841(b)(1)(B) in that case. *See* 933 F.3d at 275 n.3. The government does not explicitly invoke the 5-year minimum applicable here. *See* 21 U.S.C. § 841(b)(1)(A)

[3] Though not on grounds applicable here. *See United States v. Mabry*, 528 F. Supp. 3d 349, 354 (E.D. Pa. 2021) (E.D. Pa. plea agreement with narrower waiver language); *United States v. Harris*, 14-CR-00434 (PGS), 2021 WL 4342091, at *3 (D.N.J. Sept. 23, 2021) (request originating from Probation Office, as opposed to motion by defendant); *United States v. Fluellen*, No. CR 09-497-1, 2022 WL 309159, at *5 (E.D. Pa. Feb. 2, 2022) (E.D. Pa. plea agreement with narrower waiver language).

on the language of the plea agreement it signed with Mr. Freehauf in 2014. To maintain consistency, however, I have set aside the waiver issue and considered the merits of Mr. Freehauf's application here. *See* Section I, *supra.*

## ORDER

Accordingly, for the reasons expressed above,

IT IS this 18th day of January, 2023,

ORDERED that the defendant's motions for early termination of supervised release (DE 105, 107), pursuant to 18 U.S.C. § 3583(e), are DENIED.

/s/ Kevin McNulty
_____
KEVIN MCNULTY
United States District Judge